UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

| DOYON DRILLING, INC., | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | 3:10-cv-00094 JWS |
| vs. | ) ) | ORDER AND OPINION |
| LOADMASTER ENGINEERING, INC., LOADMASTER UNIVERSAL RIGS, INC., ROGER M. BARNES, & ROBERT R. CUDDIE, | ) ) ) ) ) | [Re: Motion at Docket 26] |
| Defendants. | ) ) ) | |

## I. MOTION PRESENTED

At docket 26, defendant Loadmaster Engineering, Inc. ("Loadmaster") moves to compel arbitration. Plaintiff Doyon Drilling, Inc. ("Doyon") opposes the motion at docket 32. Loadmaster's reply is at docket 38. Oral argument was not requested and would not assist the court.

## II. BACKGROUND

This suit arises out of the parties' contractual relationship. Loadmaster is a Texas corporation that does engineering and design work. Doyon is an Alaska corporation that performs oil and gas drilling. In 2008, Loadmaster and Doyon entered into a Technical Services Agreement by which Loadmaster agreed to provide Doyon with engineering, design, and support services for the construction of an oil rig that was to be operated on Alaska's North Slope. Doyon alleges that Loadmaster was unable to

meet the project's aggressive schedule, despite its assurances to the contrary, resulting in delays and "massively increased" costs.[1] Doyon also contends that Loadmaster misrepresented its progress and that its work product was deficient. Doyon has asserted claims for negligence, fraud in the inducement, fraudulent misrepresentation, violation of the Alaska Consumer Protection Act, breach of contract, and breach of express warranty. The present motion turns on Article XVIII of the Technical Services Agreement, which is labeled "Governing Law" and sets out various dispute resolution processes.

## III. STANDARD OF REVIEW

The Federal Arbitration Act ("FAA") allows a party "aggrieved by the alleged . . . refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement."[2] The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."[3] "The court's role under the Act is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue."[4]

## IV. DISCUSSION

**A. Article XVIII Does Not Constitute an Enforceable Agreement to Arbitrate**

The court's limited role under the FAA begins with a determination of whether there is an agreement to arbitrate. This is because "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not

---

[1]Doc. 12 ¶ 29.

[2]9 U.S.C. § 4.

[3]*Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

[4]*Chiron Corp. v. Ortho Diagnostic Systems, Inc.*, 207 F.3d 1126, 1130 (2000).

-2-

agreed so to submit."[5]  Whether the parties agreed to arbitrate is a matter of basic contract interpretation.[6]  The FAA states that "[a] written provision in . . . a contract evidencing a transaction involving commerce *to settle by arbitration* a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."[7]  The question is whether Article XVIII of the Technical Services Agreement constitutes a "written provision . . . to settle by arbitration a controversy."[8]

Article XVIII of the Technical Services Agreement is labeled "Governing Law" and provides, in pertinent part as follows:

> The parties agree that the settlement of any disputes *shall* be attempted by informal negotiation in the first instance.  In the event such dispute is not settled by informal means within sixty (60) days of the date such dispute arose, then the parties *agree* to retain the services of a professional mediator.  In the event no resolution is reached within a further thirty (30) days then either party *may* by notice to the other party, refer the dispute to binding arbitration.[9]

This provision does not constitute a written agreement to settle by arbitration any controversy because the arbitration provided for can only be initiated at the parties' discretion.  In case of any dispute, the contract states that the parties "shall" attempt informal negotiation.  If that is unsuccessful, the parties explicitly "agree" to retain a mediator.  In an abrupt departure from the directives of the previous two sentences, either party "may" refer the dispute to binding arbitration if mediation is also unsuccessful.  The clause vests discretion in either party to refer the case to arbitration, but it is not a mandatory arbitration provision.  The clause is merely permissive.

---

[5]*AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 648 (1986).

[6]*See id.* at 649 ("Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court . . . .").

[7]9 U.S.C. § 2 (emphasis added).

[8]*See Rent-A-Center, West, Inc. v. Jackson*, 130 S.Ct. 2772, 2776, 2777 (2010).

[9]Doc. 26-1 at 9 (emphasis added).

-3-

Loadmaster argues that there is "a policy in favor of arbitration that requires the liberal reading of arbitration agreements and resolution of any doubts in favor of arbitration."[10] The language of the contract, however, is unambiguous and raises no doubts. Use of the word "may" in juxtaposition to use of the words "shall" and "agree," indicates that other avenues of dispute resolution–including litigation–would remain available. The policy established by the FAA does not require a court to manipulate an explicitly permissive arbitration provision.

Under limited circumstances, "may" can be synonymous with "shall." Here, however, commands are used to express the parties' obligations with respect to informal negotiation and mediation. In this context the language concerning arbitration is plainly discretionary. Because neither Doyon nor Loadmaster agreed that arbitration would be mandatory, there is no enforceable "written provision to settle by arbitration." The absence of such a provision renders the parties' other contentions moot.

## V. CONCLUSION

For the foregoing reasons, Loadmaster's motion at docket 26 to compel arbitration is **DENIED**.

DATED at Anchorage, Alaska, this 29th day of October 2010.

/s/ JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE

---

[10]Doc. 26 at 3.